1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO R. RAMOS, | Case No. 1:15-cv-00561-SMS |
| Plaintiff, | |
| v. | ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Mario R. Ramos seeks review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DI") under Title II and for supplemental security income ("SSI") under Title XVI of the Social Security Act (42 U.S.C. § 301 *et seq.*) ("the Act").  This matter is before the Court on the parties' cross-briefs, which were submitted without oral argument to the Magistrate Judge.  Following a review of the record and applicable law, the Court affirms the decision of the Administrative Law Judge ("ALJ").

I.  PROCEDURAL HISTORY AND FACTUAL BACKGROUND[1]

A.  *Procedural History*

Plaintiff applied for DI and SSI on June 20, 2012, alleging disability beginning on January 7,

---
[1]  The relevant facts herein are taken from the Administrative Record ("AR").

2011.  AR 53, 63, 152, 159.  The Commissioner denied Plaintiff's claim on October 31, 2012, and upon reconsideration on August 13, 2013.  AR 53, 63, 77, 91.  Thereafter, he timely requested a hearing.  AR 113.

Plaintiff appeared and testified before an ALJ, Trevor Skarda, on March 13, 2014.  Also at the hearing were Plaintiff's counsel and an impartial vocational expert ("VE").  AR 27.  In a written decision dated April 14, 2014, the ALJ found Plaintiff was not disabled under the Act.  AR 21.  On February 9, 2015, the Appeals Council denied review of the ALJ's decision, which thus became the Commissioner's final decision, and from which Plaintiff filed a timely complaint.  AR 1, Doc. 1.

B. *Factual Background*

In his initial disability report, Plaintiff claimed the following conditions limited his ability to work: high blood pressure; severe arthritis; low back pain; headaches; numbness and tingling of the hands and legs; pain in the chest, ankle and knees; stiffness in the neck; and dizziness.  AR 177. Plaintiff's work history report show past jobs included caregiver and pipefitter, both of which entailed physical labor, especially the latter, which required Plaintiff to frequently lift fifty pounds and, at most, 100 pounds.  AR 195-197.

In his second disability report, submitted in request of the Commissioner's reconsideration, Plaintiff reported a number of changes in his conditions, namely that he had begun taking Paxil for depression, could sit or stand no more than ten to fifteen minutes at a time, and could not do any lifting.  AR 209.  He needed help with household chores, with putting on his socks and shoes, and took longer than before to get dressed.  AR 212.

Plaintiff's daily activities, as set forth in his Adult Function Report, consisted of eating, taking various medications, and sleeping.  Plaintiff reported some challenges with personal care such as not being able to bend over to put on pants and socks and not being able to perform certain activities while standing for long periods of time.  Additionally, he bathed only once or twice a week

2

and could not stand for more than ten minutes to cook.  He cleaned his bedroom and living room once a week for about ten minutes.  He went outside about three times a week and shopped for groceries about once a month.  He also visited the doctor once a month and had no difficulty managing his money.  He no longer wanted to socialize with others and no longer engaged in any hobbies and interests.  He would, however, talk with and watch television with family members when they visited.  He could lift no more than twenty pounds and walk for no more than half a block before needing to rest for about ten minutes.  He could not finish what he started and could pay attention for no more than twenty minutes.  AR 218-222.

Jennifer Arias, the daughter of Plaintiff's girlfriend, completed a Third Party Adult Function Report which generally supported Plaintiff's statements in his Adult Function Report.  She visited, spoke with and watched television with Plaintiff about two to three hours every day.  On a daily basis, Plaintiff took his medications, watched television and goes to bed.  His medications made him feel dizzy and sleepy.  He bathed once or twice a week, changed clothes every two days, rarely combed his hair, and did not shave often.  He could, however, feed himself.  He also took out the trash and washed the dishes every other day.  He communicated daily with friends and family on Facebook.  AR 226-233.

In a third disability report, completed before his hearing with the ALJ, Plaintiff claimed that his low back pain had worsened and that he experienced pain in his mid-back and waist area.  He struggled to get around and as a result remained in bed for most of the day.  He continued to take various medications for high blood pressure and pain, with side effects of drowsiness and dizziness.  AR 236-238.

Plaintiff had minimal earnings for the years leading up to his alleged disability onset date.  He had no earnings from 2002 to 2004.  His yearly earnings for 2005 and 2007 to 2010 ranged from $3,146.06 to $6,326.17.  AR 167.

1.  <u>Medical Evidence</u>

Plaintiff's medical evidence consists of records from Doctors Medical Center ("DMC"), Stanislaus Health Services Agency ("SHSA"),[2] and evaluations from Drs. Harjit Rita Gogna and Antoinette Acenas of MDSI Physician Services.

Reports from DMC, dated May 27, 2011 and May 3, 2012, show Plaintiff sought treatment for headaches, chest pain and blood pressure problems.  AR 274, 284.  On both occasions Plaintiff was discharged to home self-care and ordered to continue with medications.  277, 287.

Various progress notes[3] from the SHSA between June 22, 2011 and September 26, 2013, generally show Plaintiff diagnosed with all or some of the following conditions: low back pain, wrist and hand pain, hypertension, knee pain, osteoarthritis, and depression.  AR 291, 294, 295, 296, 297, 324, 328, 367, 370, 373.

On September 25, 2012, Dr. Gogna conducted a comprehensive internal medicine evaluation of Plaintiff wherein he complained of back pain and hypertension.  He reported ongoing back pain over ten years, believed he had some x-rays done but never obtained a magnetic resonance imaging ("MRI").  The pain was alleviated somewhat with medication but worsened with activities which required bending over.  Plaintiff never underwent back surgery and was never advised to see a back specialist.  He reported being diagnosed with hypertension in 2000.   When his blood pressure rises, Plaintiff gets dizzy, develops headaches and becomes nauseated.  For the most part medication helped.  AR 302.

Plaintiff's activities of daily living consisted of watching television, sometimes washing the dishes, and some cooking and laundry.  He also spent time playing with his girlfriend's

---

[2]  The SHSA "provides health care services to the community via its network of federally qualified health center – look alike outpatient clinics, public health services, an indigent health care program, and a family medicine residency program."  The Ceres Medical Office is one of six federally qualified health centers.  STANISLAUS COUNTY HEALTH SERVICES AGENCY, http://www.schsa.org/ (last visited May 5, 2016).

[3]  The handwritten progress notes are largely illegible.

grandchildren.  AR 303.  Dr. Gogna observed Plaintiff walk to the examination room without assistance, sit comfortably in the chair, walk to the examination table and get on and off without assistance.  He exhibited some limitation in putting the sock on his right foot, but had no problem with the left foot.  AR 304.  Dr. Gogna diagnosed Plaintiff with controlled hypertension and back pain.  Functionally, she opined Plaintiff: (1) had the maximum standing and walking capacity of up to six hours, (2) had no limitation in sitting capacity, (3) could lift up to fifty pounds occasionally and twenty-five pounds frequently, (4) had no limitation in climbing, balancing, stooping, kneeling, crouching, and crawling, (5) had no manipulative limitations, and (6) should avoid heights or heavy machinery in his workplace environment.  AR 306.

On July 26, 2013, Dr. Acenas completed a comprehensive psychiatric evaluation of Plaintiff. His chief complaints included depression, hypertension, back pain, ankle pain, knee pain, neck pain, chest pain, headaches, hypercholesterolemia, and arthritis.  He had no history of inpatient psychiatric hospitalizations and no family history of psychiatric problems.  Plaintiff reported being able to engage in personal grooming and hygiene, cooking, cleaning and doing the laundry.  Dr. Acenas found that Plaintiff could benefit from some form of psychiatric treatment, though he was not receiving any at the time.  On a functional level, Plaintiff could perform simple and repetitive tasks, accept instructions from supervisors, perform work on a consistent basis, maintain regular attendance, finish a normal workweek, and deal with the usual stress in a competitive workplace. AR 342-344.

2.  Plaintiff's Testimony Before the ALJ

Plaintiff was forty-five years old at the time of the hearing.  He completed the eleventh grade, one year of vocational school, and passed the GED test.  Although he had a driver's license, it was not current because he could not afford the renewal fee.  Plaintiff worked as a pipefitter for fifteen years.  He last worked in 2010 providing in-home support services, but quit due to the pain of lifting

5

required on the job.  He struggled to grab onto things due to weak hands.  AR 31-32.

Plaintiff did not think he could work because of his high blood pressure.  His blood pressure medications caused dizziness which required him to lie down about three times a day for two to four hours at a time.  Plaintiff slept about six to twelve hours a day.  He could lift no more than ten pounds and walk for less than a block before needing to rest, but did not use a cane or walker.  Additionally, his high blood pressure caused Plaintiff to suffer headaches daily.  He also took a water pill for his high blood pressure which caused him to go to the restroom an average of four to five times a day.  Plaintiff's depression also precluded him from working.  AR 33-36.

3.  Vocational Expert Testimony before the ALJ

Thomas Sartoris, the VE, spoke about Plaintiff's work history, and addressed a number of hypotheticals.  In the first hypothetical, the ALJ asked the VE to consider a person with the same age, education, and work experience as Plaintiff who could perform work at the medium exertional level.  Such person could frequently climb, balance, stoop, kneel, crouch, and crawl, but must avoid concentrated exposure to operationally-controlled dangerous moving machinery and unprotected heights.   When asked whether such person could perform Plaintiff's past work, the VE stated such person could not work as a pipefitter but could work as a home health attendant or dining room attendant.  AR 37-39.

Second, the VE was to consider the same person but who is limited to light work.  Such person cold occasionally climb ramps or stairs but never ladders, ropes or scaffolds; frequently balance; and occasionally stoop, kneel, crouch, and crawl.  The person must avoid concentrated exposure to extreme cold and heat, excessive vibration, and had the same limitations related to hazards.  When asked if such person could perform any job, the VE listed fountain server and usher.  AR 39.  Third, the VE was to consider the same person but who is limited to sedentary work.  The VE opined that such person could work as a laminator and gauger of protective and medical devices.

Fourth, the VE was to consider the same person but who could sit, stand and walk less than eight hours a day.  The VE opined that such person could not obtain employment.  Finally, the VE was to consider the same person but who needed ten plus breaks per day, lasting no longer than five minutes each, and who could lift less than ten pounds.  The VE opined that such person could not obtain employment.  AR 40.

Plaintiff's counsel also asked the VE a hypothetical.  Adding to the ALJ's third hypothetical concerning an individual who could perform sedentary work, the VE was asked whether such person could secure work if he was limited to occasional fine and gross manipulation in the upper extremities with occasional feeling.  The VE opined that such person could work as a surveillance systems monitor.  AR 40-42.

### 4.  ALJ's Decision

A claimant is disabled under Titles II and XVI if he is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of no less than twelve months.  20 C.F.R. §§ 404.1505(a), 416.905(a) (2012).  To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process which an ALJ must employ to evaluate an alleged disability.[4]

In his written decision, the ALJ found that at step one, Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of January 7, 2011.  At step two, Plaintiff had the following severe impairments: hypertension, degenerative disc disease/osteoarthritis

---

[4]  "In brief, the ALJ considers whether a claimant is disabled by determining: (1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity, the claimant can still do his or her past relevant work; and (5) whether the claimant can make an adjustment to other work. The claimant bears the burden of proof at steps one through four." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

7

of the back, and headaches.  At step three, Plaintiff did not have an impairment or combination of

impairments that met or equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P,

Appendix 1.  Plaintiff had the residual functional capacity ("RFC") to perform light work as defined

in 20 C.F.R. sections 404.1567(b) and 416.967(b), but with the following limitations: occasionally

stoop, kneel, crouch or crawl, climb ramps or stairs, but never climb ladders, ropes or scaffolds.  He

must avoid exposure to extreme cold or heat, excessive vibrations, operational control of dangerous

moving machinery and unprotected heights.  At step four, Plaintiff could not perform his past

relevant work.  But at step five, there existed jobs in the national economy which Plaintiff could

perform, namely fountain server and usher.  Consequently, the ALJ concluded that Plaintiff was not

disabled as defined under the Act.  AR 13-21.

## II.  DISCUSSION

A.  *Legal Standards*

This Court reviews the Commissioner's final decision to determine if the findings are

supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a

mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 401 (1971)), but "less than a preponderance."

*Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975).  It is "such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.

"If the evidence can reasonably support either affirming or reversing a decision, we may not

substitute our judgment for that of the Commissioner.  However, we must consider the entire record

as a whole, weighing both the evidence that supports and the evidence that detracts from the

Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of

supporting evidence."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal citation

and quotations omitted).  "If the evidence can support either outcome, the Commissioner's decision

must be upheld."  *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003); *see* 42 U.S.C. §§ 405(g),

1383(c) (2012).  But even if supported by substantial evidence, a decision may be set aside for legal error.  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

Moreover, an ALJ's error is harmless "when it was clear from the record that [the] error was inconsequential to the ultimate nondisability determination."  *Robbins v. Soc. Sec. Admin*. 466 F.3d 880, 885 (9th Cir. 2006).

B.  *Analysis*

Plaintiff's sole contention on appeal is that the ALJ failed to articulate specific and legitimate reasons for finding Plaintiff not credible.  Doc. 15, pp. 5-14.  In contrast, the Commissioner avers the ALJ specifically and explicitly set forth several reasons for discounting Plaintiff's credibility concerning the severity of his disabling pain and limitations.  Doc. 18, pp. 5-14.   Indeed, as discussed below, the ALJ's decision expressly undermines Plaintiff's contention.

As set forth under the Act, a claimant's statements about pain or other symptoms will not alone establish disability.  *Id*. at § 416.929 (2011).  "An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quotations omitted).  "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.  *Id.* at 1014-15; *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 883 (9th Cir.2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.").  But

> [a] finding that a claimant's testimony is not credible must be
> sufficiently specific to allow a reviewing court to conclude the

adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain. General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (internal quotations and citations omitted); SSR 16-3p ("The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.")

"The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citation omitted). Factors an ALJ may consider include: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Id.* The ALJ must also give consideration to the factors enumerated in 20 C.F.R. sections 404.1529(c)(3) and 416.929(c)(3). These include:

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p.

Because no evidence suggests Plaintiff was malingering, the ALJ was required to provide specific, clear and convincing reasons for rejecting the statements regarding the severity of the pain or symptoms.

At the outset of the RFC determination, the ALJ stated, "[c]redibility is reduced by several factors." AR 16. He then dedicated approximately seven paragraphs of his written decision to discussing those factors, explaining his findings regarding Plaintiff's credibility at length. First, the ALJ discussed Plaintiff's sporadic work history before the alleged disability onset date, noting the years where Plaintiff had no earnings, 2002 to 2004, and the years where his earnings did not reach the level of substantial gainful activity, 2005 and 2007 to 2010. From this, the ALJ concluded that "[t]his raise[d] a legitimate question as to whether [Plaintiff's] continuing unemployment is actually due to his impairments." AR 16. The ALJ was permitted to consider Plaintiff's work history and his findings are supported by the record. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a) ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with . . . other evidence. . . . These include . . . *efforts to work*[.]") (emphasis added) (2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (concluding the ALJ gave specific, clear and convincing reasons for discounting the plaintiff's testimony. Where her "work history was spotty, at best, with years of unemployment between jobs, even before she claimed disability").

Second, the ALJ stated credibility was "reduced in light of some of [Plaintiff's] statements, which seem[ed] to be somewhat inconsistent and exaggerated in light of the degree of limitation he has alleged." AR 16. As examples, the ALJ found no support for the statement that Plaintiff slept six to twelve hours a day and that while he claimed that he could not walk for even a block, Plaintiff did not utilize an assistive device. Further, the ALJ noted Plaintiff did not have a current driver's license because he could not afford to pay the renewal fee, suggesting that the lack of a valid license

11

was not due to any physical or mental limitations. *See* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence[.]")  All of these find support in the record.  In arriving at the findings the ALJ employed ordinary techniques of credibility evaluation. *See Smolen*, 80 F.3d at 1284.

Third, the ALJ stated credibility was "reduced by the fact that despite impairment, [Plaintiff] has engaged in a somewhat normal level of daily activity and interaction." AR 16.  *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination.")  Specifically, Plaintiff could drive, engaged in personal grooming, maintained proper hygiene, and did household chores like dishwashing, cooking, cleaning, and laundry.  The ALJ reasoned that while the "activities of daily living were somewhat limited, some of the physical and mental abilities and social interactions required . . . are the same as those necessary for obtaining and maintaining employment and are inconsistent with the presence of an incapacitating or debilitating condition." AR 16.  Indeed, that Plaintiff engaged in some household chores, communicated daily on Facebook, talked with and watched television with family members, visited with his girlfriend's daughter daily, and played with his girlfriend's grandchildren, appear incompatible with his claims—that he cannot bend over or perform activities which require standing for a long period of time, cannot sit or stand for more than ten to fifteen minutes at a time, cannot do any lifting, struggles to get around, lays in bed most of the day sleeping for six to twelve hours, and no longer wanted to socialize with others.  Moreover, the ALJ explained that "even if [Plaintiff's] daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to [Plaintiff's] medical condition, as opposed to other reasons, in view of the relatively benign medical evidence and other factors[.]"  AR 16.  This finding is also supported by the record

1  given the unremarkable medical reports and the evaluations from Drs. Gogna and Acenas, in

2  particular the latter stating that Plaintiff could perform simple and repetitive work on a consistent

3  basis, with regular attendance, and handle the usual stress in a competitive work environment.

4  Fourth, the ALJ found that the objective medical record undermined Plaintiff's credibility.

5  *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence

6  cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in

7  his credibility analysis.")  The positive objective clinical and diagnostic findings, in the ALJ's view,

8  did not support Plaintiff's alleged restrictive functional limitations.  Notably, no examining or

9  treating physician provided a medical source statement which endorsed the alleged functional

10  limitations.  The ALJ discussed in detail the medical records from DMC, explaining how they did

11  not support finding that Plaintiff was precluded from all substantial gainful activity.  The ALJ also

12  discussed at length Dr. Gogna's evaluation of Plaintiff and explained how his statements to her

13  reflect an inconsistency with his alleged severity of impairments and functional limitations.

14  Examples include his admission that medications helped with the high blood pressure, Dr. Gogna's

15  observation that Plaintiff did not use an assistive device, required no assistance getting to the

16  examination room as well as getting on and off the examination table, managed to remove his socks

17  without assistance, and received generally normal physical examination results.  *See* Creech v.

18  Colvin, 612 F. App'x 480, 481 (9th Cir. 2015) (concluding the "ALJ permissibly declined to credit

19  Plaintiff's testimony concerning the extent of her physical limitations" when "[s]he got on and off

20  the examining table with ease[.]")[5] (internal quotations omitted).  Finally, the ALJ found that notes

21  from the SHSA did not show a significant deterioration in Plaintiff's condition when treatment

---

[5]  This unpublished decision is citable under Rule 32**.**1 of the Federal Rules of Appellate Procedure. *See also* 9th Cir. R. 36–3(b).

consisted of continued prescription medications for hypertension, osteoarthritis and lumbago.[6]  AR 17-18.  This suggested treatment which was conservative.  *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Osenbrock v. Apfel*, 240 F.3d 1157, 1166 (9th Cir. 2001) (concluding the ALJ satisfied the burden of providing clear and convincing reasons for discrediting a claimant's symptom testimony where the ALJ found "claimant has not participated in any significant pain regimen or therapy program").  Again, the ALJ's finding here are supported by the record and show he did not arbitrarily reject Plaintiff's credibility.

Given the ALJ's thorough discussion of Plaintiff's credibility, the Court is hard pressed to find merit in Plaintiff's position.  The ALJ discounted Plaintiff's credibility based not only on Plaintiff's reported daily activities and the lack of support in the objective medical evidence, but also based on his sporadic history, his own inconsistent and exaggerated statements, and the conservative treatment received.  The ALJ did not, as Plaintiff avers, articulate generalities.  He explicitly stated the testimony he found not credible, and discussed evidence which cast doubt on the testimony, thereby supporting his findings.  He considered factors which the Ninth Circuit has deemed appropriate in formulating the reasons for discounting Plaintiff's credibility and did so convincingly, with specificity and clarity.

### III.  CONCLUSION

Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the

///

///

///

---

[6]  The ALJ discussed the SHSA treatment notes only briefly.  While factually supported by the record, the ALJ's reasoning here was, in part, confusing.  The ALJ noted that Plaintiff received medication for lumbago despite his complaint of back pain.  Lumbago is a term for low back pain. ENCYCLOPEDIA BRITANNICA, http://www.britannica.com/science/lumbago (last visited May 5, 2016). That Plaintiff received medication for lumbago does not therefore defeat the suggestion that his low back pain had not worsened.  Rather, the medication is reflective of conservative treatment.

Commissioner of Social Security.  The Clerk of Court is DIRECTED to enter judgment in favor of the Commissioner and against Plaintiff.


IT IS SO ORDERED.

Dated:   **May 11, 2016**                              **/s/ Sandra M. Snyder**
                                                    UNITED STATES MAGISTRATE JUDGE